316 P.2d 290

**COCHISE HOTELS, Inc., a corporation, Appellant,**

v.

**DOUGLAS HOTEL OPERATING CO., Inc., a corporation, Appellee.**

**No. 6241.**

Supreme Court of Arizona.

Oct. 8, 1957.

Jerman, Jerman & Butler and Wesley E. Polley, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, Charles L. Strouss, Jr., and Rex H. Moore, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal by Cochise Hotels, Inc., (hereinafter designated as the landlord) from a judgment rendered against it and in favor of the Douglas Hotel Operating Co., Inc., (hereinafter designated as the tenant), and from an order denying a motion for a new trial.

The facts are as follows: On April 15, 1948 the landlord leased to the tenant for a period of fifty (50) years, the Gadsden Hotel located in Douglas, Arizona, at a yearly rental of $65,000, and pursuant to the terms of the Lease agreement deposited $65,000 with the landlord as security for the performance of the provisions and obligations of the lease.

On April 30, 1949, the tenant filed an action in the Superior Court of Cochise County to cancel the lease, and requesting return of the security deposit on the ground that the lease was induced and procured by *fraud* (Case No. 13885). Judgment was granted in favor of the landlord and the tenant appealed, but the appeal was later dismissed by stipulation. The tenant failed to pay the rent due under the lease on July 15, 1950, and as a result thereof, the landlord filed an action against the tenant on August 1, 1950 (Case No. 14336) alleging five causes of action, and requesting the following relief:

(a) Eviction of the tenant and possession for the landlord.

(b) A restraining order to prevent the tenant from removing property from the hotel premises.

(c) A receivership for the hotel property.

(d) An accounting of rental deposits made to the tenant by sub-tenants.

(e) Attorney's fees incurred by the landlord in prosecution of the eviction suit and for defense of the fraud case (No. 13885).

(f) Order enjoining transfer of liquor license.

(g) Judgment for rental payment due at time of eviction (paragraph 3 of lease).

(h) Judgment for damages which might accrue to the landlord after the eviction of the tenant which it alleged in count III thereof would amount to the sum of not less than $30,000. (This is evidently based upon the provisions of paragraph 15 of the lease.)

A motion to dismiss was filed and argued and the trial court ordered that the causes of action relative to the attorney's fees in the fraud case, (e) supra, and the liquor license transfer, (f) supra, be dismissed. Thereafter, on October 9, 1951 under the authority of a stipulation signed by the attorneys for the parties, the trial court in that matter (Case No. 14336) ordered that

the remaining causes of action be dismissed *with prejudice.*

Prior to the order of dismissal in case No. 14336, an order to show cause was pending, returnable August 8, 1950, to determine the question of whether a receiver should be appointed. At the date of the hearing the order to show cause was vacated and possession of the Gadsden Hotel was *surrendered* and turned over (by the tenant) to the landlord who operated the hotel at a profit for a period of 56 months, and so far as the record shows, is still operating it.

On March 6, 1953 the tenant demanded return of the $65,000 security deposit given under the lease; the landlord refused to return the deposit; and the tenant thereafter, on June 9, 1953, brought the action in the instant case to recover the deposit. This action was brought on the theory that all obligations arising out of the hotel lease transaction were terminated by dismissal with prejudice in case No. 14336. It was brought on the further theory that by reason of the landlord's failure to re-let said hotel and its continued operation thereof on its own account, and not on behalf of the tenant, it had elected to not re-let the same and is estopped to hold the tenant liable under said lease for future rentals, and that therefore the tenant was entitled to full return of the security deposit. The tenant alleged in its complaint that it surrendered the possession of the hotel to the landlord who unconditionally accepted possession thereof. This last allegation, however, was abandoned in the tenant's opening statement to the trial court.

The landlord in the instant matter, by amended answer, admitted taking possession of the hotel, but denied that it was unconditional or that the obligation to pay rent for the balance of the term was terminated. It denied that the hotel was being operated on its own account, and alleged that the hotel was operated for and on the account of the tenant. It alleged that diligent effort had been made by it to secure a new tenant and alleged that continuous litigation was a major obstacle to securing a new tenant; that the tenant's action was premature for the reason that the exact amount of the returnable deposit could only be determined at the end of the 50-year term of the lease. It alleged that the tenant's claim is barred by the doctrine of res judicata because of the compulsory counterclaim rule. The landlord also *counter-claimed* for damages allegedly suffered by it because of the tenant's default in the lease agreement, but it introduced no evidence to support it. In any event the issue therein raised became res judicata upon the dismissal of cause No. 14336 as we shall hereinafter show.

The trial court, sitting without a jury, upon request, adopted certain findings of fact and conclusions of law, and rendered judgment in favor of the tenant for the full amount of the deposit.

The landlord, in its appeal, presents five assignments of error. We will consider them seriatim. The tenant cross-appeals and presents two assignments of error which we will discuss at the conclusion of this opinion.

The landlord's *first* assignment of error complains that the trial court erred in its conclusion of law (No. 5) to the effect that the tenant was entitled to judgment for the full amount of the deposit because, it is urged, the tenant failed to file a counterclaim in case No. 14336 as required under the compulsory counterclaim provision of section 21-437, A.C.A.1939, as amended, now Rule 13(a), Rules Civ.Proc., 16 A.R.S., which provides that:

"A pleading shall state as a counterclaim *any claim which at the time of serving the pleading the pleader has against any opposing party,* if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action." (Emphasis supplied.)

■ It is the landlord's contention that the tenant had a positive duty under the above rule to counterclaim for recovery of the $65,000 security deposit sought to be recovered in this case. The tenant refutes this contention and argues that its right to sue for the return of the security deposit is not res judicata under the rule because, its right to recover such deposit did not accrue until *after* dismissal of case No. 14336. The tenant relies on the language of the rule that a compulsory counterclaim is limited to a claim "which at the time of serving the pleading the pleader has against any opposing party." In other words, there is a necessity that the cause of action on the counterclaim *be in existence* at the time of the serving of the pleading by the opposing party, see 22 A.L.R.2d 633. A claim which a party defendant may have *by reason of the dismissal* of a cause of action does not fall in the category of a compulsory claim in that cause of action. This is clear because the claim does not come into existence until the dismissal of such action.

■ It is our view that the arguments of the tenant are sound and that its right to the return of the security deposit did not arise until after it was relieved of all of its obligations under the lease. The combination of the surrender of possession of the hotel premises on August 8, 1950 and the subsequent stipulated dismissal of cause No. 14336 with prejudice on October 9, 1951, had the legal effect of relieving the tenant of any duty to counterclaim in that action.

The tenant's right to the return of the security arose upon the dismissal with prejudice of cause No. 14336, and under the terms of the lease providing for its return under the conditions therein named. In other words, only when the tenant's duties under the lease ceased, did its right to the return of the deposited funds arise.

The landlord cites several Arizona authorities on the effect of failure to file a counterclaim under the provisions of Rule 13, supra. See Biaett v. Phoenix Title & Trust Co., 70 Ariz. 164, 217 P.2d 923, 22 A.L.R.2d 615; Keystone Copper Mining Co. v. Miller, 63 Ariz. 544, 164 P.2d 603; Snyder v. Betsch, 59 Ariz. 535, 130 P.2d 510; Snyder v. Betsch, 56 Ariz. 508, 109 P.2d 613. There is no question about the correctness of the law of these cases and its res judicata effect once it is determined that the claim was in existence "at the time of serving the pleading." But they have no application to the instant case because the claim of the tenant against the landlord for recovery of the security deposit was not in existence at the time the landlord's pleadings were served on the tenant. The landlord also cites the following cases for authority that the claim for return of the security in the instant matter was a proper subject for a compulsory counterclaim. Hyman v. Jockey Club Wine, Liquor & Cigar Co., 9 Colo.App. 299, 48 P. 671; Steiger v. Feldman, 94 Misc. 243, 157 N.Y.S. 1042; Gordon v. Foote, 120 Cal. App. 76, 7 P.2d 709.

Although the above cited cases discuss counterclaims they are primarily based upon the provisions of the lease agreement or on a statute entirely dissimilar from Rule 13(a), and are easily distinguishable from the instant case. Therefore, we hold that the claim for return of the security deposit could not be the subject of a compulsory counterclaim and such claim is not res judicata in the instant matter.

For its second and third assignments the landlord asserts that the trial court erred in its conclusion of law (No. 3) which stated:

"That defendant [landlord], upon accepting possession of the hotel property, was required to act with reasonable celerity in re-letting said property *which it has not done,* and its failure to do so constitutes acceptance of the surrender of the premises and a termination of the lease." (Emphasis ours.)

and in its findings of fact (No. 13) which stated:

"That from August 8, 1950, until the date of the trial of this cause, defendant did not make a genuine effort to re-let said hotel but continued to operate the same and its option to re-let said hotel, under the provisions of said lease, has been extinguished or abandoned by it."

It is claimed that the evidence does not support such a finding and conclusion because, it is urged, the uncontradicted evidence shows that the landlord did act with reasonable celerity and diligence in attempting to re-let the premises.

The legal principle enunciated by the trial court and involved herein is that failure on the part of the landlord to re-let the premises under the circumstances of this case amounts to a relinquishment of its right to re-let, and the continued operation of the hotel was for and on behalf of itself as owner and not for the tenant. It is the law that when the conduct of the lessor is inconsistent with the rights of the tenant under the lease, a surrender results. Yates v. Reid, 36 Cal.2d 383, 224 P.2d 8.

We believe that our solution of the issue raised in assignment No. 4 will effectively dispose of assignments 2 and 3 because the dismissal of cause No. 14336 with prejudice had the legal effect of terminating the lease. That entitled the tenant to prosecute this action for the recovery of the money deposited with the landlord as security regardless of the failure of the landlord to re-let the hotel and the exercise of authority over the premises inconsistent with the rights of the tenant. However, since considerable argument has been devoted to the subject, we submit that a careful analysis of the evidence shows that there is present in the record substantial evidence to support the finding and conclusion of the trial court that the landlord did not use reasonable celerity and diligence in attempting to re-let the hotel premises. As a primary fact, the evidence shows that the landlord re-entered the leased premises and after almost five years had still not re-let such property. We agree with the trial court's comment in the memorandum opinion to the effect that:

" * * * Although it had been operating the hotel for over four and a half years at the time of this trial, the defendant [landlord] made no reports unto the plaintiff [tenant]. While there was some evidence that the defendant sought to relet the premises, the defendant did not make much effort to relet the hotel, and did not relet it during the period of approximately five years after the property was surrendered to the defendant. This action on the part of the defendant justifies the conclusion that the option to relet was extinguished or abandoned."

Other substantiating facts brought out during the trial were that one of the landlord's few offers to lease showed that as of December 30, 1954, the landlord had increased the security deposit to $100,000. It was also shown that other letters of correspondence related to actual efforts and intent to sell the hotel rather than to offer it for lease. The trial court could easily infer from such evidence that the efforts to re-let were not realistic under circumstances.

such as these where the landlord was operating the hotel at an average net profit of $5,441.61 per month for a 56-month operation; had never at any time accounted to the tenant; and had in all respects treated the income from the operation of the hotel as its own.

The landlord, as its *fourth* assignment, urges that the trial court erred in its conclusion of law No. 5 which states in part:

"That judgment should be entered in this cause in favor of the plaintiff and against the defendant * * *."

whereby judgment was rendered in favor of the tenant and all relief denied on the landlord's counterclaim. Since it is the landlord's position that he is entitled to accrued damages *to the time of the alleged surrender,* the landlord claims that the trial court was obliged to find as a fact (or conclude as a matter of law) the time when the *surrender* took place.

The tenant contends that the landlord was not entitled to recover on its counterclaim. The tenant further contends that the trial court did not err in granting judgment in favor of the tenant because the dismissal with prejudice in the eviction suit (Case No. 14336) had the effect of an adjudication on the merits of all issues raised in that case which barred the landlord, under the doctrine of res judicata, from asserting any rights the validity of which might have been· litigated in that suit. The tenant makes it clear that it is

*not* relying on the theory that the lease was terminated by the "unconditional acceptance by the landlord of the surrender of the property by the tenant." Its theory is simply that the landlord's claims have been *fully adjudicated in the manner above* stated.

The trial court did not agree in toto with the tenant on this theory and in its conclusion of law No. 2 it held that dismissal with prejudice of cause No. 14336, the eviction suit, did not terminate the liability of the tenant under the terms of the lease. This conclusion is based upon the theory that at the time of the dismissal of the eviction suit, no right of action existed on behalf of the landlord for future rents, and that the action for future rents was premature. There is a cross-appeal on this point.

The trial court seemed to arrive at this conclusion because the judgment of dismissal in that case was entered upon stipulation of counsel for the landlord and tenant, and for the further reason that the action was one for future rents and, therefore, premature. A judgment entered by stipulation is called a "consent judgment" which is just as valid as a judgment resulting from a trial on the merits. 2 A.L.R. 2d 521 et seq. Wall v. Superior Court, 53 Ariz. 344, 89 P.2d 624.

A decree of dismissal with prejudice, unless made because of some defect

in the pleadings, or for want of jurisdiction, or upon some ground which does not go to the merits, is a final determination. Coates v. Santa Fe, etc., Ry. Co., 15 Ariz. 25, 135 P. 717; Wetzler v. Howell, 37 Ariz. 381, 294 P. 611; Wall v. Superior Court, supra. It has the same effect as an adjudication on the merits of the case. DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342.

■ The trial court was in error both in its interpretation of the effect of such judgment on future rents, and its interpretation of the nature of the cause set up in cause of action III of the landlord's so-called eviction action No. 14336. However, these errors do not effect the validity of the judgment pronounced. Cause of action III was not an action for future rents. It was an action for damages which were fixed in the complaint at not less than $30,000. This claim is predicated upon paragraph 15 of the lease providing that in the event of default by the tenant and eviction by the landlord, the tenant should pay at the same time as rent is payable under the terms of the lease, a sum equivalent to rent. The rent provided in the lease less income received from operation was intended to be the measure of damages recoverable. The dismissal of the landlord's complaint in that action with prejudice is res judicata as to all issues that were raised or could have been determined under the pleadings, including its right to recover damages based upon future rents.

■ As its *fifth* and final assignment the landlord argues that the trial court erred in rendering judgment in favor of the tenant (and in its supporting conclusions of law) for the reason that the tenant's action was premature *under the lease,* and an action could not be maintained until the expiration of the agreed 50-year term.

This proposition of law we believe to be sound under ordinary circumstances. However, it has no application in this particular case. The dismissal with prejudice of cause No. 14336 had the effect of relieving the tenant from any and all obligation arising out of its lease agreement with the landlord. It had the effect of adjudicating not only the fact that no rent had accrued which could be collected by the landlord at that time, but also that no damages were recoverable from the tenant based upon future rents. It adjudged that no attorney's fees were recoverable for services rendered the landlord in cause No. 13885 as well as all other obligations imposed upon the tenant under the terms of the lease. Under this pronouncement of the law cases cited by the landlord based upon the theory that the contractual liability of the tenant continues after a termination of the lease have no applicability.

The tenant's cross-appeal presents two assignments of error. *Number one* is to the effect that the trial court erred in concluding under its conclusion of law (No. 2)

"That dismissal with prejudice of cause No. 14336 in the Superior Court of Arizona in and for the County of Cochise, being the eviction suit, did not terminate the liability of the plaintiff under the terms of the lease."

for the reason that the dismissal with prejudice was *res judicata* as to every possible obligation and liability of the tenant to the landlord under the lease. We have heretofore discussed this matter fully and agree with tenant's position. No further consideration is necessary.

The *number two* assignment of the tenant urges that the trial court erred in denying judgment to the tenant for *interest* at 6% on the security deposit from October 9, 1951, for the reason that when the order of dismissal with prejudice was entered in case No. 14336, the landlord was no longer entitled to retain the deposit, and that his withholding thereafter was a wrongful conversion.

It appears to us from a study of the terms of the lease relating to the security deposit that it was the intention of the parties that this deposit was not to bear interest at any time. This, of course, must be interpreted to mean during the period the lease was in force. We do not agree with counsel for the tenant that it is entitled to interest from the date of the dismissal of case No. 14336, but we are of the view that it is entitled to interest at six per cent

per annum from the date of formal demand upon the landlord for its return which the record shows to have been on March 9, 1953. Since neither party took any action to have determined their legal rights under the terms of the lease for nearly two years after its termination, it appears reasonable to us that interest should begin to run from the date of demand. Other than a modification to allow interest as above specified, the judgment is affirmed.

UDALL, C. J., and WINDES, STRUCKMEYER and JOHNSON, JJ., concur.