[Civil No. 4795. Filed December 17, 1945.]

[164 Pac. (2d) 603.]

KEYSTONE COPPER MINING COMPANY, a Corporation, Appellant, v. T. C. MILLER, Also Known as Clyde Miller, U. R. MILLER, E. T. DUKES, as Administrator of the Estate of Mary E. Miller, Also Known as and Called Mrs. W. W. Miller, Deceased, Appellees.

Mr. Clifford R. McFall, for Appellant.

Mr. Martin S. Rogers, for Appellees.

MORGAN, J.—Plaintiff, an Arizona mining corporation claiming to be the owner of certain unpatented mining claims with the fixtures and improvements thereon, situate in Cochise County, brought suit against the defendants. The complaint contains three causes of action. The first count is for cancellation of judgments, in favor of the individual defendants and the administrator's decedent, charged to have been procured through fraud and upon the ground that plaintiff's title was clouded thereby. The second count charged that the judgments were barred by the statute of limitations, that the defendants were barred and estopped from asserting the liens thereon or from enforcing such judgments, and that plaintiff's title be quieted as against the judgments. The third count was brought under Section 27–1501, Arizona Code Annotated 1939, for possession of the property which defendants were alleged to be unlawfully withholding.

Answer to the complaint and the various causes of action contained therein was made by defendants. On this appeal, the answer to the third count only need be

considered. This answer denies that plaintiff is the absolute owner of and entitled to the immediate and exclusive possession of the property. We paraphrase the following special defense urged by defendants:

Defendants are in lawful, peaceable and adverse possession "under a certain contract of purchase executed by the plaintiff in favor of the defendants' predecessor in estate, title and possession, dated the 20th day of December, 1921, signed by the officers of Keystone Copper Mining Company, and confirmed and approved by the board of directors signing the written minutes of said approval," which contract was filed and recorded in the office of the county recorder. The contract as recorded describes a tract of 125 feet by 125 feet. They assert peaceable, adverse possession of the tract as described, and allege that possession was taken under the contract of purchase referred to. They further allege that their possession is lawful, and that they and their predecessors in interest have been and now are in continuous possession, and have paid the taxes thereon for more than twenty years. The bar of the statute of limitations to plaintiff's claim is asserted. They invoke the provisions of Section 29–106, Arizona Code Annotated 1939, providing that whenever an action is barred by the provisions of Chapter 29, Article 1, Real Actions, the person who pleads and is entitled to the bar shall be held to have full title. Defendants also, through counterclaim, sought to have their title quieted to the tract of land mentioned. The allegations of the counterclaim are practically the same as those contained in the answer to the third count, with the following additional averments; that defendants are the owners of the surface rights with the improvements thereon of the tract described, and have been in continuous possession of such premises, paying the taxes thereon since 1921. The counterclaim relies on the contract to purchase as recorded, but does not allege

that the contract was confirmed or approved by the board of directors.

Defendants' affirmative defense and counterclaim was placed in issue by plaintiff's reply. Plaintiff pleads that defendants are estopped to claim the tract of ground in question and the improvements thereon, upon the ground that they have made various oral and written representations to the effect that all of said property and improvements belonged to plaintiff, and that in reliance thereon many persons had loaned and advanced money to the corporation and had purchased its bonds and stock.

The case was tried to the court without a jury. Written opinion and decision was filed. Findings of fact and conclusions of law, on the second and third counts of the complaint and defendants' counterclaim, were made. Although demand was made for findings upon the first count, none were made nor any formal judgment entered thereon.

The findings and conclusions are long, and for the purpose of this appeal may be summarized as follows: The court found that plaintiff was the owner of the property as alleged in its complaint, and that the judgments mentioned in the second count were barred by the statute of limitations, no valid renewal thereof having been made, and concluded that plaintiff was entitled to judgment as prayed for under the second count.

Additional findings in connection with the third count to the following effect were made: From and prior to 1921 to November 7, 1941 the defendants, T. C. and U. R. Miller, acted as directors of the plaintiff corporation, the former acting in the capacity of secretary during such period, and the latter from the year 1929 acted in the capacity of president and general manager. One W. W. Miller was the father of the defendants T. C. and U. R. Miller, and the husband of

Mrs. W. W. Miller. From prior to the year 1921 to the date of his death in 1929, W. W. Miller was a director, the president and general manager of the corporation. Subsequent to November, 1941, and prior to the institution of the action, plaintiff demanded of defendants possession of the premises, which demand was refused.

In 1921 and 1922 the officers of plaintiff contemplated a conveyance to W. W. Miller of a portion of the Haggerman claim, and relying upon such contemplated conveyance Miller constructed a home and store building on the property which defendants have occupied peaceably for more than twenty years, paying taxes thereon each year until the filing of the present action, the residence being known as "the Miller residence." About July 17, 1922 certain directors of the corporation met, the minutes of which referred to an agreement entered into by W. W. Miller and one Alex. Bannow (the written agreement referred to in the answer and counterclaim of defendants), reciting that W. W. Miller was erecting a building for his individual use, business and dwelling. This agreement was adopted by all directors present. At the time of the meeting, the board of directors consisted of fourteen members, of which there were present in person only six directors, among them being W. W. Miller and T. C. Miller, the latter one of the defendants in this action. The defendants' claim to possession is limited to that portion of the Haggerman claim upon which is located the residence and store building. At all times prior to November 1941 plaintiff corporation used and occupied the building and the premises upon which it was located as an office and place for the transaction of its business. The defendants, during the same period, used and occupied the building and premises in their capacity as officers, directors, agents and employees of plaintiff, and as and for their private dwelling place. Defendants have failed to prove that their use or occupancy

or possession of building and tract prior to November 17, 1941 was hostile or adverse to plaintiff. Many years have elapsed since defendants entered into possession and constructed the building, and they have been in peaceable possession with full knowledge of the officers of plaintiff for more than twenty years.

The court then concluded that: (1) plaintiff was the owner of and entitled to possession of the mining claims described in its complaint; (2) defendants have no right to the possession of any part thereof under or by virtue of any contract to purchase; (3) they have no rights of possession under the laws relating to adverse possession; (4) that W. W. Miller nor defendants as successors in interest could acquire any title or right to possession under such laws; (5) plaintiff is entitled to the immediate and exclusive possession of the claims and every part thereof, except that part of the Haggerman claim referred to as the residence and store building; (6) defendants have withheld such portion of the Haggerman claim and a judgment or decree awarding to plaintiff possession of the residence, store building and premises upon which it is located would not be in accord with equity nor in furtherance of justice; and (7) that plaintiff is not entitled to recover its possession from defendants.

The issues under defendants' counterclaim were found against them. The court concluded that plaintiff is the owner of the property, and defendants were not entitled to the relief prayed for in their counterclaim.

Judgment was entered in accordance with the findings and conclusions, holding that the judgments were barred by limitations, quieting title under the second count of the complaint, and awarding plaintiff possession of the property under count three, with the exception of the 125 foot tract described in defendants' answer; denying relief under the counterclaim and plaintiff's request for findings of fact and conclusions

of law under the first count of the complaint, and that neither party recover costs.

From the portions of the judgment adverse to it, plaintiff appealed. No cross-appeal has been made by defendants. Three principal questions are raised by this appeal. They are:

1. Where plaintiff seeks relief on more than one count or cause and the court finds that he is entitled to relief and awards him judgment on one of the counts, does the court's failure to make findings and conclusions as to the other counts constitute reversible error where the testimony presented under such counts is not before this court;

2. In an action under Section 27–1501, Arizona Code Annotated 1939, may the right to plaintiff's possession of the premises be denied where defendants specifically defend on the theory that they have acquired title by adverse possession, but the evidence discloses that defendants, who were officers and directors of plaintiff corporation, as licensees with its acquiescence constructed at their own expense a building upon the premises and used and occupied it openly and notoriously, paying taxes thereon for more than twenty years, their possession not being adverse nor hostile to the title of the company, which also used the premises for corporate business, and the relief afforded it is within the facts pleaded;

(3) Can the judgment in such case be sustained where based largely on principles of estoppel not specially pleaded nor prayed for, and no amendment was offered or made to conform to the facts or relief afforded, and the plaintiff is misled to his injury by the sole theory of relief claimed by defendants.

Other questions are raised by plaintiff on this appeal, but inasmuch as the answer to the foregoing questions will be determinative of the case, we think they need only be considered incidentally. We have

carefully examined the evidence presented pertaining to the affirmative defense and counterclaim. It is our view that the evidence supports the findings made by the trial judge. We have also considered the various authorities presented by plaintiff, and are of the opinion that the findings are within the issues made by the pleadings.

 Rule 52(a), Rules of Civil Procedure, Section 21–1028, Arizona Code Annotated 1939, provides, ''In all actions tried upon the facts without a jury, the court, if requested, shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.'' We consider this a mandatory provision. *United States* v. *Aluminum Co. of America, D. C.*, 2 F. R. D. 224; *Bowles* v. *Russell Packing Co.*, 7 Cir., 140 Fed. (2d) 354. Obviously the rule means that where, as here, request is seasonably made it is the duty of the trial court to find not part but all of the facts. Thus, the court should have made findings on the first count of plaintiff's complaint which was put in issue. Bowles v. Russell Packing Co., *supra.* It does not follow, however, that the court's failure in this respect can be held reversible error on this appeal.

 The right of appeal exists only on behalf of a party who is aggrieved by the judgment or order appealed from. Section 21–1701, Arizona Code Annotated 1939. The evidence pertaining to the first count is not before us. There is nothing to indicate that plaintiff has been aggrieved by the failure of the court to make findings of fact and conclusions of law on the first count. The plaintiff was allowed judgment on the second count which quiets its title as against the lien of the judgments. This in itself indicates, in the absence of the evidence, that the court must have believed the plaintiff had failed to establish the allegations of the first count, because if the judgments were

void on the ground of fraud there would have been no need to invoke the statute of limitations as a bar. However that may be, the right of plaintiff to have the court's ruling reviewed could only be invoked by a presentation of the evidence pertaining to this count. In the absence of the transcript of the testimony, we must assume that if the court had made findings they would have been adverse to plaintiff. The assignments pertaining to this question have already been settled adversely to plaintiff's position by the opinion of this court in *Golden E.-B. Mines* v. *Valley National Bank,* 60 Ariz. 400, 138 Pac. (2d) 289. Appellate courts uniformly hold, under appeal statutes similar to ours, that where the record is not before them, questions pertaining to sufficiency of findings, lack of evidence or the failure of the court to rule upon findings may not be considered. The case of *Delanoy* v. *Delanoy,* 216 Cal. 23, 13 Pac. (2d) 513, 514, is practically on all fours with the case at bar and perfectly illustrates the rule. The appellant set out by way of affirmative defense a judgment lien which existed in her favor against the property involved in the litigation. The law of California required that in the particular action where the question arose, the court was required to protect the rights of the lienholders. The appellant contended that the failure of the court to find on that issue constituted reversible error. The court said:

" . . . None of the evidence produced in the trial court is before us. It is elementary that it is incumbent upon the appellant to show error by the record on appeal. Every presumption is in favor of the correctness of the rulings and decision of the trial court. When an appeal is perfected on the judgment roll alone, we must assume that all of the findings of the lower court are amply sustained by the evidence. Even though it appears that the trial court failed to find on an issue raised by the pleadings, error cannot be predicated on such failure in the absence of a record showing that

evidence was introduced on such issue sufficient to sustain a finding on behalf of appellant. 2 Cal. Jur. 525, § 262. In order to warrant the reversal of a judgment for failure to find on an issue, it must be shown by the record on appeal that evidence sufficient to sustain a finding for the complaining party was introduced. 24 Cal. Jur. 947, § 189. No such record has been presented. We must assume, therefore, that, had a finding been made on the issue, it would have been adverse to apellant.''

██ While the judgment in this case did not in terms settle the issues raised under the first count, we think it does dispose of them by necessary implication. The rule is stated in *De Zavala* v. *Scanlan* (Tex. Com. App.), 65 S. W. (2d) 489, 491:

''Although a judgment does not by express language dispose of all of the parties and of all of the issues, it is nevertheless a final judgment if it does dispose of them by necessary implication. See *Southern Pacific Co.* v. *Ulmer* (Tex. Com. App.), 286 S. W. 193; *Tennison* v. *Donigan* (Tex. Com. App.), 237 S. W. 229; *Trammell* v. *Rosen*, 106 Tex. 132, 157 S. W. 1161.''

██ It has been held that where two causes of action are stated in a complaint and put in issue at the trial, and the judgment awards recovery upon one but is silent as to the other, such judgment is *prima facie* an adjudication that plaintiff was not entitled to recover upon the other cause. *Bozeman Mortuary Ass'n* v. *Fairchild*, 253 Ky. 74, 68 S. W. (2d) 756, 92 A. L. R. 419.

For the reasons stated, it is our view that the first question presented by the appeal must be answered adversely to plaintiff's position.

The solution and answer to the second question rest primarily on two subsidiary propositions. First, does the evidence make out a case for relief to defendants; second, the power of the court to afford relief under the issues as made by the pleadings, regardless of the relief prayed for by defendants.

Before addressing ourselves to the first of these propositions, we will refer to certain principles called to our attention by plaintiff. Its position is that under Section 27–1501, and the rule applied in *Tolmachoff* v. *Eshbaugh,* 41 Ariz. 318, 18 Pac. (2d) 256, that a counterclaim to quiet title is not maintainable in an action under the statute, and therefore the affirmative defense that defendants are entitled to possession for the period and under circumstances which would presuppose a grant and give them title and possession under the limitation statute may not be considered. The opinion in the Tolmachoff case was rendered before the adoption of the rules of civil procedure for superior courts. The provision in the statute relative to counterclaims has been superseded by Section 21–347, Arizona Code Annotated 1939 (Rule 13(a) Rules Civ. Proc.), and we have so held. *Snyder* v. *Betsch,* 56 Ariz. 508, 109 Pac. (2d) 613; *Snyder* v. *Betsch,* 59 Ariz. 535, 130 Pac. (2d) 510. Defendants' affirmative defense and counterclaim were properly made under the rule. All existing counterclaims must be filed or they are deemed waived if they arise out of the transaction or occurrence of the subject matter of the opposing party's claim. Section 21–437, *supra.*

It is said that a director, officer, agent or representative of a corporation may not acquire an interest adverse to the corporation through or by virtue of his official connection. This is true, and we think the trial court recognized and applied the rule in this case. We do not interpret the findings and conclusions as holding that defendants could acquire a benefit under any agreement which required the vote of the interested party to make it effective, or to indicate that the rule prohibiting a corporation to make gifts was violated, nor that they rest on any action taken at a meeting where a quorum of the directors was not

present. The findings and conclusions are adverse to any such interpretation.

We have paraphrased the findings and conclusions at length, and it would be useless to again recite them. It is evident that the trial court's conclusion that defendants could not be dispossessed is based upon the following ultimate facts as they appear in the findings and may be inferred from the evidence:

W. W. Miller, the predecessor in interest of defendants, openly and with the knowledge of the corporation constructed at his own expense, and for his individual use and benefit, a dwelling and building on the corporate property. This structure was used by him and the defendants without objection and with the acquiescence of the company until the date of his death in 1929. Thereafter, his successors in interest occupied and used the structure in the same manner and with complete acquiescence of the company until 1941. The building was also used for corporate purposes during the entire period. Taxes on the building were paid by W. W. Miller and his successors in interest for twenty years. It appears that a written recorded agreement, which the court excluded from evidence as not constituting an agreement of sale or evidence of title right as alleged in the complaint, and certain admitted minutes of a meeting where a quorum of the directors was not present, disclosed the proposed use to be made of the premises involved. It is our view that the agreement should have been admitted as tending to show that in the construction of the building and the use of the tract, defendants were not trespassing nor attempting by methods incompatible with their relation to the corporation to acquire an interest in the property adverse to it, but were rather licensees by invitation.

Under these circumstances—an entry on the ground of the corporation with notice of intended

use, the construction of valuable improvements thereon, acquiescence in possession and use and joinder in such by the company—an executed irrevocable license to use the premises for the purpose designated may be presumed. 33 Am. Jur. 400, Sec. 92; 408, Sec. 103, Licenses. An executed license, as where the licensee expends money in constructing buildings and uses the ground with the assent, knowledge and acquiescence of the owner, creates or results in an equitable right capable of being assigned and which may not be disregarded or revoked by the owner of the premises. Annotation, 130 A. L. R. 1258. Even if revocable, it is generally held, as between the parties, upon revocation the licensee is entitled to compensation or reimbursement for expenditures made on the faith of the license. 33 Am. Jur. 411, Sec. 106, Licenses; *Mayor and Council of City of Baltimore* v. *Brack,* 175 Md. 615, 3 Atl. (2d) 471, 120 A. L. R. 549; Annotation, 44 L. R. A., N. S., 566. The rule of irrevocability which might apply here is stated in 33 Am. Jur. 408, Sec. 103, Licenses, as follows:

"The cases holding to this rule as to irrevocability of certain licenses proceed on two distinct theories, one theory being that when the licensee expends large sums of money in making the improvement, and such expenditure is made without opposition by the licensor, the license becomes executed and, as such, irrevocable; and that, in fact, what was at its inception a license becomes in reality a grant. The other theory and the reason most frequently given is that after the execution of the license, it would be a fraud on the licensee to permit a revocation; and the principles of equitable estoppel are invoked to prevent what would work a great hardship in many instances. This is especially true where a licensor not only grants the right to the licensee to go on his land but joins in the enterprise and accepts the benefits of the licensee's labor and expense."

■ The recognition that defendants may have acquired an equitable right as licensees does not violate the rule that directors or managing officers of a corporation may not lawfully acquire an interest in property adverse to it. Basically, whatever right defendants may have is founded upon a contract implied from the circumstances. It is well settled that a director or managing agent of a corporation may enter into a contract with it and such contract is valid if the officer or director acts in good faith and there is no fraud or unfairness. 19 C. J. S., Corporations, § 781, p. 150. A lease of property by the corporation to an officer is valid in the absence of fraud or prejudice to the corporation. 19 C. J. S., Corporations, § 782, p. 155. A contract, even though unauthorized in its inception, as through the vote of the interested party or where the transaction can be effected only by the stockholders, may be validated by the acquiescence of the other directors, or by the body of the stockholders, as the case may be, and thus the right to avoid it may be waived. No independent or substantive act of ratification is required. Acquiescence, with knowledge and acceptance, is sufficient. 19 C. J. S., Corporations, § 783, p. 157. Ordinarily a corporation may not repudiate a contract made with a director or officer and retain the benefits. He must be placed "in *statu quo* as a condition of relief, unless the contract was fraudulent or tainted with vice or immorality. . . . ". 19 C. J. S., Corporations, § 783, p. 159.

■ There would seem to be no warrant from the evidence to hold that the transaction here should not be measured by the rules applying to contracts generally between a director and officer and the corporation. The improvements were constructed openly in good faith and used notoriously. The corporation had the use of the structure for its headquarters. The public records and the corporate minutes disclosed the

transaction. For twenty years there was acquiescence by the non-interested stockholders, directors and officers.

Section 21–1203, Arizona Code Annotated 1939 (Rule 54(c), Rules Civil Procedure) contains the following provision:

" . . . Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

This rule, which is taken from and is the same as Rule 54(c), Federal Rules of Civil Procedure, 28 U. S. C. A. following Section 723c, page 697 has been given a liberal interpretation by the federal courts. The relief to which a party is entitled depends upon the facts pleaded rather than upon the theories advanced. *Atwater* v. *North American Coal Corp.*, D. C. N. Y. 1940, 36 Fed. Supp. 975. Where, on any theory of the case, the bill states a cause for equitable relief, it may be granted under a prayer for general relief though other specific relief has been mistakenly demanded. *Liquid Carbonic Corp.* v. *Goodyear Tire & Rubber Co.*, D. C. Ohio 1941, 38 Fed. Supp. 520. Where a plaintiff states a cause of action for any relief, he will be granted the relief to which he is entitled under the facts pleaded, regardless of his designation of the cause or what he has asked for in his prayer. *Kansas City, St. L. & C. R. Co.* v. *Alton R. Co.*, 7 Cir., 1941, 124 Fed. (2d) 780. The party entitled to a judgment must be allowed such relief as the pleaded facts justify, regardless of the formal demands. *Cohen* v. *Randall*, 2 Cir., 1943, 137 Fed. (2d) 441, *certiorari* denied 320 U. S. 796, 64 Sup. Ct. 263, 88 L. Ed. 480. See also *Audi Vision, Inc.*, v. *RCA Mfg. Co.*, 2 Cir., 1943, 136 Fed. (2d) 621, 147 A. L. R. 574.

 Under this rule, a court is required to grant any relief which may be justified from the facts pleaded, although other and different relief, through mistake or otherwise, is demanded. The question then is, do the allegations of defendants' answer to count three and their cross-complaint justify the judgment of the court in maintaining them in possession. Defendants' right to possession can be maintained only upon the fact that acting in pursuance of what, under the circumstances, amounted to a license, considerable expenditures were made by them in the construction of the building on plaintiff's property. No allegation appears either in their answer or counterclaim concerning any expenditure. They do say that they are the owners of the improvements on the tract in controversy. But this allegation apparently rests upon the assumption that they have acquired the title by adverse possession. Defendants, by reference, made the recorded agreement of December 20, 1921, describing the 125 foot tract and disclosing that the building was to be erected at Miller's expense, a part of their answer. Apparently it was considered as being incorporated in the answer. Treating this agreement as part of the pleadings, we think, under the liberal rule which we have referred to, the judgment is responsive to the facts pleaded. We, therefore, answer the second question affirmatively.

 The law requires that estoppel must be specially pleaded. Section 21–406, Arizona Code Annotated 1939 (Rule 8(c), Rules Civil Procedure). Although such a defense may under the rules be deemed waived for failure to plead, Section 21–436, Arizona Code Annotated 1939 (Rule 12(h), under the provisions of Section 21–449, Arizona Code Annotated 1939 (Rule 15(b), amendments may be made to conform to the evidence and to raise issues and present defenses not made by the original pleadings. Thus the defense of estoppel

would not be deemed waived by failure to plead it originally if pleaded at the time of trial. Section 21–449 provides:

"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."

▉ Here objection was made to certain evidence tending to prove that the building on the tract in question had been constructed at the expense of the defendants. The testimony was allowed but no motion was made to amend the pleadings to conform to this evidence or theory. The defendants clung doggedly to their theory of the case that they were entitled to possession by reason of acquired ownership through adverse possession. Under these circumstances, it is obvious that plaintiff was misled to its injury in not submitting any evidence which it might have adduced tending to show that the improvements were not made at defendants' expense, and that they were not in fact licensees with an interest. The law requires that all litigants be afforded full opportunity to present their claims.

Under these circumstances, we are compelled to answer the third question in the negative, and to hold that the judgment as entered on the third count cannot be sustained. In the interest of justice, and in order that the merits of the cause may be fully presented, the defendants should be allowed an opportunity to amend their affirmative defense and counterclaim in conformity with the facts adduced at the trial, with the privilege to plaintiff to file such further reply as it may deem appropriate, and both parties should be per-

mitted to present any additional competent evidence available in support of their respective pleadings.

The judgment on count three, in so far as it denies plaintiff possession of the building and ground claimed by defendants, is set aside, and the case is remanded for further proceedings in conformity to this opinion. In all other respects, the judgment of the court is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.